[Cite as *State v. Thomas*, 2015-Ohio-415.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101202**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JERMAIN THOMAS**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-575711-A

**BEFORE:** E.T. Gallagher, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** February 5, 2015

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:     Kristin Karkutt
        Brad S. Meyer
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Jermain Thomas ("Thomas"),[1] appeals his rape and kidnapping convictions. We find some merit to the appeal and affirm Thomas's conviction, but reverse his sentence and remand this case to the trial court for resentencing.

{¶2} On June 27, 2013, Thomas was charged with three counts of rape and one count of kidnapping as a result of conduct he allegedly committed on June 28, 1993. All counts included one- and three-year firearm specifications. Prior to trial, Thomas filed a motion to dismiss the charges, arguing he was prejudiced by the 20-year delay between the alleged incident and the indictment. The trial court denied the motion and the case proceeded to a jury trial.

{¶3} The victim, A.W., testified that on the evening of June 28, 1993, she left her house on Dickens Avenue in Cleveland to walk to her cousin's house on Manor Avenue, one street over. In the darkness, a man approached her and forced her to walk south on East 97th Street toward Hilgert Drive. The man stayed close behind her holding something into her back that she believed was a gun. They walked up a driveway of a house next to an empty field where the man forced A.W. onto her knees and vaginally raped her. Although it was dark, there was sufficient light for A.W. to see that the man was holding a gun. There were no known witnesses of the crime.

{¶4} After the rape, A.W. ran home to use the bathroom before running to a neighbor's house where a friend called the police. Later that evening she went by ambulance to St. Luke's Hospital where Dr. Cynthia Boes ("Dr. Boes") collected evidence of the rape in a rape kit. A.W.

---

[1] The trial record reflects defendant-appellant's name has also been spelled "Jermaine," as indicated in the trial transcript and the parties' briefs. However, in the record on appeal, his name was spelled "Jermain." Accordingly, we refer to defendant-appellant as "Jermain Thomas."

described the rape in detail to Dr. Boes, who wrote a narrative account of the incident in A.W.'s chart. A few days after the rape, Officer Debra Simmons ("Simmons") of the Cleveland Police Department met with A.W. in her home to investigate the rape. A.W. was unable to provide a detailed description of the suspect because it was dark, and she did not look at his face at any time during the incident. Without any leads, the case went cold.

{¶5} In 2006, scientists at the Ohio Bureau of Criminal Investigation ("BCI") tested the evidence in A.W.'s rape kit and found DNA that matched Thomas's DNA. A detective contacted A.W. and informed her that BCI had identified a suspect with DNA evidence from the rape kit. A.W. informed the detective that she did not want to prosecute him. She explained she "didn't want to relive that moment again." Accordingly, A.W. signed a "Waiver of Prosecution," and the detective once again closed the investigation.

{¶6} In 2013, an investigator from the Cuyahoga County Prosecutor' Office notified A.W. that the prosecutor's office was proceeding with the prosecution of the suspect in her rape case. The investigator discussed the incident with A.W. and presented a photograph lineup of suspects. A.W. was unable to identify the perpetrator from the lineup but agreed to assist in the prosecution.

{¶7} At the conclusion of the trial, the jury found Thomas guilty of one count of rape and one count of kidnapping, with the attendant one- and three-year firearm specifications. The court sentenced Thomas to concurrent indefinite prison terms of 8-25 years on the rape and kidnapping convictions, plus three years on the firearm specifications to be served consecutive to the underlying offenses. The trial court also classified Thomas a sexual predator pursuant to H.B. 180. Thomas now appeals and raises five assignments of error.

**Preindictment Delay**

**{¶8}** In the first assignment of error, Thomas argues the trial court erred in denying his motion to dismiss the indictment due to preindictment delay. He contends the delay prejudiced his ability to present a defense.

**{¶9}** The Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, provides: "No person shall * * * be deprived of life, liberty, or property, without due process of law." The Ohio Supreme Court has held that "[a]n unjustifiable delay between the commission of an offense and a defendant's indictment therefore, which results in actual prejudice to the defendant, is a violation of the right to due process of law." *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus. *See also United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

**{¶10}** Courts apply a two-part test to determine whether preindictment delay constitutes a due process violation. The defendant has the initial burden of showing that he was substantially and actually prejudiced as a result of the delay. *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). If the defendant establishes actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829. Thereafter, the due process inquiry involves a balancing test by the court, weighing the reasons for the delay against the prejudice to the defendant, in light of the length of the delay. *Id*. at ¶ 51.

**{¶11}** In determining whether a defendant was actually prejudiced by preindictment delay, the court must consider "the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." *Id.* at ¶ 51. Prejudice is not presumed solely

because there was a lengthy delay, and the defendant may not rely on speculation or vague assertions of prejudice. *State v. Copeland*, 8th Dist. Cuyahoga No. 89455, 2008-Ohio-234, ¶ 13. Proof of actual prejudice must be specific, particularized, and non-speculative. *State v. McFeeture*, 8th Dist. Cuyahoga No. 100434, 2014-Ohio-5271, ¶ 120, quoting *State v. Stricker*, 10th Dist. Franklin No. 03AP-746, 2004-Ohio-3557, ¶ 36. Therefore, in order to establish actual prejudice, the defendant must demonstrate the exculpatory value of the evidence of which he was deprived due to the delay. *Id.*

{¶12} In this case, there was a 20-year delay. Although the delay does not, by itself, establish actual prejudice, Thomas argues there were at least five witnesses who could have provided specific exculpatory information if the case had been prosecuted sooner. First, Thomas contends that Officer Simmons, who investigated the rape and interviewed A.W. in 1993, could have provided exculpatory evidence but she passed away four years before trial. Thomas asserts that Simmons's testimony could have been exculpatory because A.W.'s trial testimony was inconsistent with the statement she gave to Simmons at the time of the rape. A.W. reported to Simmons that the suspect raped her orally, vaginally, and anally, but testified at trial that she only remembered being raped vaginally.

{¶13} However, the discrepancy between A.W.'s statement to Simmons and her trial testimony has no exculpatory value. It is not as if A.W. described a suspect who in no way resembled Thomas, or that A.W. reported something that might suggest she consented to having sex with Thomas. Both of A.W.'s statements were generally consistent, and both statements unequivocally described a rape beside a house adjacent to a vacant lot.

{¶14} Thomas also complains the ambulance driver was never identified, and two neighbors, who observed A.W. immediately after the rape, have since passed away. Thomas also

maintains that because Dr. Boes had no independent recollection of her examination of A.W. and relied entirely on A.W.'s medical record for her testimony, Thomas suggests Dr. Boes might have remembered something exculpatory if she had been interviewed closer in time to the rape. However, Thomas fails to explain how his defense would have been helped if Dr. Boes had a more vivid recollection, or if the ambulance driver and neighbors had been available to testify. That these witnesses would have offered exculpatory evidence is purely speculative since Thomas cannot identify any specific evidence they would have provided that might have helped his defense.

{¶15} In this case, Thomas fails to demonstrate how any witness would have helped his defense if the case had been investigated and prosecuted more promptly. Indeed, Thomas practically concedes in his brief that his argument is entirely speculative when he states that he has been "put in the position of having to recreate for the court what might have happened if the trial had occurred promptly," and "we simply don't know what the missing witnesses might have said." (Appellant's brief at 7.) Therefore, because Thomas fails to demonstrate the exculpatory value of the evidence of which he was deprived as a result of the delay, he fails to establish actual prejudice, and the trial court properly denied his motion to dismiss.

{¶16} The first assignment of error is overruled.

**Victim's Hearsay Statement**

{¶17} In the second assignment of error, Thomas argues the trial court violated his Sixth Amendment right of confrontation when it allowed Dr. Boes to read the victim's description of the rape as documented in A.W.'s medical records. He contends the statement constituted testimonial hearsay because it described the criminal offense for which he was charged and did

not fall under the medical diagnosis and treatment exception to the hearsay rule provided in Evid.R. 803(4).[2]

**{¶18}** The Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Hearsay is an out of court statement offered to prove the truth of the matter asserted. Evid.R. 801(C). Thus, whenever the state seeks to introduce hearsay into evidence in a criminal proceeding, the court must determine not only whether the evidence fits within an exception to the hearsay rule, but also whether the introduction of such evidence offends an accused's right to confront witnesses against him. *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 29.

**{¶19}** In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars the admission of "testimonial statements of witnesses absent from trial." *Id*. at 59. In *Crawford*, the court explained that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." This means that the state may not introduce "testimonial" hearsay against a criminal defendant, regardless of whether such statements are deemed reliable, unless the defendant has an opportunity to cross-examine the declarant. *Id*. at 53-54, 68.

---

[2] Evid.R. 803(4) states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \*

(4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

{¶20} In *Crawford*, the court also held that the Confrontation Clause only requires exclusion of "testimonial" as opposed to "non-testimonial" evidence. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). If a statement is not testimonial, the principles embodied in the Confrontation Clause do not apply. *Whorton v. Bockting*, 549 U.S. 406, 420, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007).

{¶21} Although the *Crawford* court did not specifically define the term "testimonial," it explained that hearsay statements are implicated by the Confrontation Clause where they are "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford* at 52. Since *Crawford*, there have been questions about whether a victim's statements to medical personnel as opposed to law enforcement are testimonial. In *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, the Ohio Supreme Court addressed this question and held that an adult rape victim's hearsay statements to a nurse practitioner during a medical examination were admissible even though the victim was unavailable for cross-examination at trial.

{¶22} In reaching this conclusion, the *Stahl* court adopted the "objective witness test" articulated in *Crawford* and held that

> [i]n determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations.

*Stahl* at paragraph two of the syllabus. Applying this test, the *Stahl* court determined that the victim's statements to the nurse were nontestimonial because she "could have reasonably believed

that although the examination conducted at the [sexual assault] unit would result in scientific evidence being extracted for prosecution purposes, the statement would be used primarily for health-care purposes." *Id*. at ¶ 47. Indeed, the victim had separately provided a statement about the rape to police. Under these circumstances, the court found that the victim's statements to the medical professional were made for the primary purpose of receiving medical treatment as opposed to investigating past events related to a criminal prosecution. *Id.* at ¶ 25.

{¶23} In *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, the Ohio Supreme Court revisited this question in the context of a child sexual assault. In *Muttart*, the court held that a child victim's statements to physicians and counselors about how her father sexually abused her were nontestimonial and admissible as evidence because they were made to medical personnel in the course of diagnosis and treatment. The *Muttart* court explained that "[s]tatements made to medical personnel for purposes of diagnosis and treatment are not inadmissible under *Crawford* because they are not even remotely related to the evidence that the Confrontation Clause was designed to avoid." *Id*. at ¶ 62. *See also State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775; *State v. Bowleg*, 8th Dist. Cuyahoga Nos. 100263 and 100264, 2014-Ohio-1422.

{¶24} In this case, A.W. provided the same narrative account of the rape to the police and her medical provider. Dr. Boes testified that medical professionals routinely record the patient's description of how an injury occurred in addition to the physical findings of a medical examination because they are relevant to medical diagnosis and treatment. (Tr. 501.) Although Dr. Boes collected DNA evidence during A.W.'s examination for potential prosecution, A.W.'s primary reason for describing the circumstances of the rape to the doctor was for medical treatment rather than investigation. Moreover, because A.W. testified at trial, Thomas was

afforded the right to cross-examine her. Therefore, there was no violation of the Confrontation Clause, and the evidence was admissible under the medical diagnosis and treatment exception to the hearsay rule provided in Evid.R. 803(4).

{¶25} The second assignment of error is overruled.

### Victim's Prior Inconsistent Statements

{¶26} In the third assignment of error, Thomas argues the trial court erred in refusing to admit the original police report into evidence. He contends it was admissible for impeachment purposes because it contained a statement from A.W. made to Officer Simmons at the time of the rape that was inconsistent with her trial testimony.

{¶27} A trial court is vested with broad discretion to determine the admissibility of evidence, so long as that discretion is exercised in accordance with the rules of procedure and evidence. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). We therefore will not disturb the trial court's decision to admit or exclude evidence absent an abuse of discretion. An abuse of discretion connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 506, 589 N.E.2d 24 (1992).

{¶28} Pursuant to Evid.R. 613(B), a party may introduce extrinsic evidence of a witness's prior inconsistent statement to impeach his or her credibility. However, when extrinsic evidence of a prior inconsistent statement is offered into evidence pursuant to Evid.R. 613(B), the proponent of the evidence must lay a foundation through direct or cross-examination in which (1) the witness is presented with the former statement, (2) the witness is asked whether she made the statement, (3) the witness is given an opportunity to admit, deny, or explain the statement, and (4)

the opposing party is given an opportunity to interrogate the witness on the inconsistent statement. *State v. Mack*, 73 Ohio St.3d 502, 515, 653 N.E.2d 329 (1995).

{¶29} When presenting the prior inconsistent statement, counsel is not required to show the prior statement or disclose its contents to the witness at the time he or she is interrogating the witness. Evid.R. 613(A); *State v. McQueen*, 8th Dist. Cuyahoga No. 44990, 1983 Ohio App. LEXIS 13740, fn. 6 (Feb. 3, 1983). If a witness denies making the statement, extrinsic evidence of the statement is generally admissible if it relates to "a fact of consequence to the determination of the action." Evid.R. 613(B)(2)(a); *State v. McKinney*, 8th Dist. Cuyahoga No. 99270, 2013-Ohio-5730, ¶ 14. A statement that the witness "does not remember" is equivalent to a denial for purposes of establishing the requisite foundation for impeachment of a witness with a prior statement. *State v. Wilbon*, 8th Dist. Cuyahoga No. 82934, 2004-Ohio-1784, ¶ 26.

{¶30} In this case, A.W. testified at trial that the suspect raped her vaginally, but denied that he raped her anally or orally. Thomas sought to impeach A.W.'s testimony with evidence of a prior inconsistent statement contained in the police report in which she told Officer Simmons that she had been raped vaginally, orally, and anally. In an attempt to lay the required foundation, Thomas's trial counsel questioned A.W. as follows:

> Q. Do you recall telling an officer that you unwillingly gave oral sex to the suspect and the suspect ejaculated in your mouth? Do you recall that?
>
> A: No.
>
> Q: Do you recall telling an officer that the suspect forced the victim on her back and had vaginal sex with the victim and ejaculated in the victim's vagina?
>
> A: No.
>
> Q: And do you recall telling the same officer the suspect turned the victim over and had rectal intercourse with the victim and the suspect ejaculated in the victim's rectum?

A: No.

(Tr. 708.)   Thus, Thomas's trial counsel presented A.W. with the prior statements by asking her if she made such prior statements to police.   Counsel also gave her an opportunity to admit or deny the statements.   And since the state had the opportunity to question A.W. about the statement on redirect examination, all the necessary elements of the foundation were laid, and the police report should have been admitted into evidence for purposes of impeachment.

{¶31} Nevertheless, the trial court's error in refusing to admit the police report into evidence was harmless.   A criminal defendant has a constitutional right to a trial free from prejudicial error but not necessarily a trial free of all error.   *State v. Brown*, 65 Ohio St.3d 483, 485, 605 N.E.2d 46 (1992).   Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."   An error does not affect substantial rights if there is no reasonable probability that the error contributed to the defendant's conviction.   *Brown* at 485.   In the harmless error analysis, the state has the burden of proving that the error did not affect the substantial rights of the defendant.   *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15.

{¶32} Thomas sought to introduce the police report to impeach A.W. Although lack of memory constitutes a denial for purposes of laying the foundation, A.W.'s testimony did not contradict the statement she gave police 20 years earlier.   She testified that she did not remember making the prior statement, not that she never made the statement.   Therefore, even if the police report had been admitted into evidence it would not have made A.W. any less credible.

{¶33} A.W.'s testimony that she was vaginally raped was consistent with her statement to Officer Simmons.   Thomas was only convicted of vaginal rape; the jury acquitted him on the

counts of oral and anal rape. Moreover, evidence of other prior statements corroborated A.W.'s trial testimony that she had never seen Thomas before the rape and did not see him after the rape until the time of trial. Yet, BCI discovered Thomas's DNA in A.W.'s rape kit. The only reasonable explanation for the presence of Thomas's DNA in the rape kit is that he raped A.W. Accordingly, we find the court's refusal to admit the police report into evidence was harmless beyond a reasonable doubt.

{¶34} The third assignment of error is overruled.

## Mistrial

{¶35} In the fourth assignment of error, Thomas argues the trial court erred in denying his motion for a mistrial. Thomas claims he was unfairly prejudiced by the prosecutor's improper interrogation of a BCI supervisor regarding his practice of testing DNA on behalf of defendants in some cases but not in this case. Thomas contends the prosecutor improperly placed the burden of proof on the defense.

{¶36} The decision to grant or deny a mistrial lies within the sound discretion of the trial court. *State v. Garner*, 74 Ohio St.3d 49, 656 N.E.2d 623 (1995). An appellate court will not disturb the exercise of that discretion absent a showing that the accused has suffered material prejudice. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). A mistrial should be declared only when the ends of justice so require and "a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). Further, to warrant a mistrial as a result of prosecutorial misconduct, the defendant must show there is a reasonable probability that but for the prosecutor's misconduct, the outcome of the proceeding would have been different. *State v. Loza*, 71 Ohio St.3d 61, 78, 641 N.E.2d 1082 (1994).

{¶37} Thomas argues the following line of questioning by the prosecutor improperly shifted the burden of proof to the defense:

Q: Other than getting calls from the submitting agency, in your tenure at BCI have you ever been called upon by a defense attorney for testing in a case?

A: Yes, I have. We've been called from submitting agencies, law enforcement, prosecutor's office, and I have been called from the defense. I take down a request. I do a consult obviously with law enforcement and the prosecution [sic] office and then when an agreement has been made between them and the courts we will do testing if necessary.

Q: And have you ever had the occasion to send items out from BCI to another laboratory for testing at the request of a defense attorney?

A: Yes. In our DNA reports we have a remarks section that says we save samples for independent testing. If they wish, they can send it out, or they can decide just to send it out to a third party and not have BCI do it at all. And that has been the case in the past before.

Q: Was that the case with this particular matter?

[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled.

Q: Was that the case with this matter?

A: This case was just sent on to DNA and DNA was performed. No calls were made as to who would do the DNA analysis.

{¶38} Despite Thomas's argument to the contrary, these questions did not shift the burden of proof to the defense. The witness's responses to these questions demonstrated that BCI is an independent agency that consults with both prosecutors and defendants. The questions were likely intended to dispel any perceptions of bias the jury may have had if they thought BCI worked exclusively for the government.

{¶39} In its charge, the court explained to the jury that Thomas is presumed innocent until the state proves him guilty beyond a reasonable doubt. The court further explained that the state

bears this burden of proof. A jury is presumed to follow the instructions given to it by a trial judge. *State v. Loza*, 71 Ohio St.3d at 78-79, 641 N.E.2d 1082. We find nothing in the record that placed the burden of proof on Thomas.

{¶40} According, the fourth assignment of error is overruled.

## Sentencing

{¶41} In the fifth assignment of error, Thomas argues the trial court erred in sentencing him to an indefinite prison terms of 8-25 years under the sentencing provisions in effect at the time the rape and kidnaping were committed. Thomas contends that although the rape and kidnaping offenses were committed in 1993, he should have been sentenced under Am.Sub.H.B. 86 ("H.B. 86"), which became effective on September 30, 2011. The state, on the other hand, contends that H.B. 86 is an extension of Am.Sub. S.B. 2 ("S.B. 2") and only applies to offenses committed on or after July 1, 1996. Therefore, the state argues, Thomas's rape and kidnaping offenses, which were committed in 1993, are not subject to the sentencing amendments in H.B. 86.

{¶42} Section 5 of S.B. 2 states:

The provisions of the Revised Code in existence prior to July 1, 1996, shall apply to a person upon whom a court imposed a term of imprisonment prior to that date and, NOTWITHSTANDING DIVISION (B) OF SECTION 1.58 OF THE REVISED CODE, to a person upon whom a court on or after that date and in accordance with the law in existence prior to that date, IMPOSES a term of imprisonment for an offense that was committed prior to that date.
(Emphasis sic.)

Thus, in S.B. 2 the General Assembly specifically declared that all defendants who committed crimes on or before July 1, 1996 had to be sentenced under the law in existence at the time of the offense, "notwithstanding division (B) of section 1.58 of the Revised Code." Section 3,

Am.Sub.S.B. No. 269, 146 Ohio Laws, Part IV, 11099, amending Section 5 of S.B. 2. *See State v. Rush*, 83 Ohio St.3d 53, 697 N.E.2d 634 (1998).

{¶43} However, H.B. 86 does not incorporate this exclusionary language. On the contrary, Sections 3 and 4 of the act expressly provide that certain specified offenses and certain sentencing provisions are subject to H.B. 86 sentencing amendments even though the subject offenses were committed prior to its effective date. As relevant here, Section 4 states, in relevant part:

> SECTION 4. The amendments to * * * division (A) of section 2929.14 of the Revised Code that are made in this act apply to a person penalized * * * under th[at] section[] on or after the effective date of this section and to a person to whom division (B) of section 1.58 of the Revised Code makes the amendments applicable.

{¶44} Division (A) of R.C. 2929.14, which governs basic prison terms, states in relevant part:

> [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:
>
> (1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, ten, or eleven years.

Thomas was convicted of rape in violation of R.C. 2907.02(A)(2) and kidnaping in violation of R.C. 2905.01(A)(4). Both offenses are first-degree felonies. Pursuant to R.C. 2929.14(A), as amended by H.B. 86, the trial court was required to impose a definite prison term of "three, four, five, six, seven, eight, nine, ten, or eleven years," for first-degree felonies. Section 4 of H.B. 86

specifically states that the basic prison terms outlined in R.C. 2929.14(A), as amended by the act, apply to a person who is penalized under that section.

{¶45} In contrast to Section 5 of S.B. 2, which excluded application of R.C. 1.58(B) from its provisions, Section 4 of H.B. 86 expressly states that H.B. 86 amendments apply "to a person to whom division (B) of section 1.58 of the Revised Code makes the amendments applicable." R.C. 1.58(B) states:

> If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

{¶46} These provisions are consistent with the legislative intent behind H.B. 86. In *State v. Limoli*, 140 Ohio St.3d 188, 2014-Ohio-3072, 16 N.E.3d 641, the Ohio Supreme Court examined the effect of H.B. 86 on a defendant who was convicted of an offense specified in Section 3 of H.B. 86 prior to its effective date but was not sentenced until after its effective date. The specified offense was possession of crack cocaine in violation of R.C. 2925.11. The court noted that Section 3 of H.B. 86, which is very similar to Section 4, specifically identified R.C. 2925.11 and stated that R.C. 1.58(B) makes the amendments to that code section applicable. Therefore, the *Limoli* court concluded that individuals who possessed crack cocaine in violation of R.C. 2925.11 prior to H.B. 86's effective date, but are penalized after its effective date, must be sentenced under the H.B. 86 amendments. Regarding the legislature's intent, the Supreme Court explained:

> The goal of the General Assembly in enacting H.B. 86 was "to reduce the state's prison population and to save the associated costs of incarceration by diverting certain offenders from prison and by shortening the terms of other offenders sentenced to prison." [*State v.*] *Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612 at ¶ 17, citing Ohio Legislative Service Commission, Fiscal Note & Local Impact Statement to Am.Sub.H.B. 86, at 3 (Sept. 30, 2011).

*Limoli* at ¶ 10.

{¶47} Although neither Section 3 nor Section 4 specify that rape and kidnapping are offenses covered by H.B. 86, Section 4 states that H.B. 86 amendments apply to defendants penalized under R.C. 2929.14(A). Moreover, H.B. 86 expressly states that where its sentencing provisions provide a more lenient sentence than previous sentencing statutes, then R.C. 1.58(B) makes the H.B. 86 amendments applicable. *See* Sections 3 and 4 of H.B. 86.

{¶48} As previously stated, R.C. 2929.14(A)(1), as amended by H.B. 86, states that the basic prison term for a first-degree felony "shall be three, four, five, six, seven, eight, nine, ten, or eleven years." Yet, the trial court sentenced Thomas to an indefinite term of 8 to 25 years pursuant to the sentencing provisions in effect in 1993, when the offense was committed. The maximum prison term Thomas could receive for rape under R.C. 2929.14(A)(1) as amended by H.B. 86 is only 11 years, whereas the maximum the trial court imposed under pre-S.B. 2 sentencing laws was 25 years. Section 4 provides that Thomas is entitled to the more lenient sentencing provisions of H.B. 86 by virtue of R.C. 1.58(B). Therefore, the indefinite prison sentence was not authorized by law and violated Section 4 of H.B. 86.

{¶49} In *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, the Ohio Supreme Court held that "sentences that do not comport with mandatory provisions are subject to total resentencing." *Id.* at ¶ 20, citing *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 11. Unauthorized sentences are illegal and void ab initio. *State v. Beasley*, 14 Ohio St.3d 74, 75, 471 N.E.2d 774 (1984). Therefore, Thomas's indefinite sentences are void and must be vacated.

{¶50} The fifth assignment of error is sustained.

**{¶51}** Judgment affirmed in part, reversed in part, and remanded to the trial court for resentencing under H.B. 86.

It is ordered that appellant and appellee share the costs taxed herein.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR