[Cite as *State v. Jackson*, 2015-Ohio-4274.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102394**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# WALTER JACKSON

DEFENDANT-APPELLANT

## JUDGMENT:
### AFFIRMED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-585519-A

**BEFORE:** Stewart, J., Kilbane, P.J., Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 15, 2015

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, OH 44067


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Mary Weston
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, J.:

**{¶1}** A jury found defendant-appellant Walter Jackson guilty of raping two women in separate incidents. The first rape occurred in June 1996 and a positive identification led to Jackson's arrest, but he was released because the victim refused to cooperate with the police. The second rape occurred in July 1996, and the victim likewise refused to cooperate with the police. No charges were filed in either case until 2014, after test results from rape kits were matched to Jackson. Jackson filed a motion to dismiss the indictment (both incidents were charged in a single indictment), claiming that the substantial passage of time between the date of the alleged rapes and the date of the prosecution prejudiced his ability to present a defense. The court denied the motion, leading to trial and a subsequent conviction for both rapes.

**{¶2}** In this appeal, Jackson's first assignment of error is that the court erred by denying his motion to dismiss the indictment for preindictment delay. He argues that a nearly 18-year delay from the date of the offense to the date of the indictment caused him actual prejudice because potential witnesses were lost, memories diminished, and physical evidence was lost or spoiled. He also argues that the state failed to offer a justifiable reason for the delay.

**{¶3}** The statute of limitations for a criminal offense is a defendant's primary protection against overly stale criminal charges. *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In some circumstances, however, the Due

Process Clause of the Fifth Amendment has been applied to provide additional protection against egregious delay in instituting prosecutions. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). As with all due processes claims, a claim of preindictment delay rests on "basic concepts of due process and fundamental justice." *State v. Jones*, 8th Dist. Cuyahoga No. 101258, 2015-Ohio-2853, ¶ 13. To establish that preindictment delay violated the Due Process Clause, a defendant must first show that the delay caused actual and substantial prejudice to his right to a fair trial and, second, that the state delayed to gain a tactical advantage or slowed the process down for some other impermissible reason. *United States v. Gouveia*, 467 U.S. 180, 192, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), citing *Lovasco*, 431 U.S. at 789. Regarding the second factor, the state must produce evidence of a justifiable reason for the delay. *State v. Whiting*, 84 Ohio St.3d 215, 217, 1998-Ohio-575, 702 N.E.2d 1199. Decisions to grant or deny a motion to dismiss on grounds of preindictment delay are reviewed for an abuse of discretion. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33, citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983).

{¶4} Evidence at trial showed that the victim of the June 1996 rape, M.C., told the police that she was hitchhiking and accepted a ride from a man she later identified as Jackson. After driving a short distance, Jackson pulled the car onto a side street, brandished a knife and forced her to perform oral sex on him and then engage in sexual intercourse. At one point, a cyclist approached the car and asked if everything was okay, but the rapist pointed a BB gun at the cyclist and told him to leave. After being released

from the car, M.C. called the police and gave them a description of the assailant and the license number of his car. The police used this information to apprehend Jackson within minutes of receiving the call. M.C. identified Jackson in a cold stand lineup at the scene of the rape. The police arrested Jackson and recovered a knife and a BB gun. Jackson told the police that M.C. was a prostitute and he had paid for her services. He also told the police that he believed that the cyclist who approached the car while he and M.C. were engaged in sexual conduct was attempting to rob him. M.C. did not follow up with the police and Jackson was released from custody without being charged. The police returned the confiscated weapons. In 2013, vaginal swabs taken at the time of the offense were tested for the first time and identified Jackson as the source of the DNA recovered from M.C. The police contacted M.C. and she agreed to testify against Jackson.

{¶5} Jackson argues that the 18-year delay in instituting the prosecution for offenses committed against M.C. resulted in the loss of crucial evidence: the medical records compiled when M.C. sought treatment have been destroyed, the clothing taken from the victim at the time is lost, and the car in which the rape was alleged to have occurred is no longer available. In addition, Jackson argued that he was unable to locate the sex crimes detective assigned to the case in 1996.

{¶6} Courts have consistently held that proof of actual prejudice must be "'specific, particularized, and non-speculative.'" *State v. McFeeture*, 2014-Ohio-5271, 24 N.E.3d 724, ¶ 120 (8th Dist.), quoting *State v. Stricker*, 10th Dist. Franklin No.

03AP-746, 2004-Ohio-3557, ¶ 36. Nothing Jackson offered in support of his motion to dismiss went beyond speculation as to what he might have been able to show had the trial occurred sooner. Having told the police at the time of his arrest that he and M.C. were engaged in consensual sexual conduct, he could not claim prejudice stemming from the delay in DNA testing. In addition, Jackson never claimed to have any witnesses who might corroborate his version of events. Although Jackson maintains that M.C.'s medical records were no longer available by the time of his indictment, he makes no specific argument as to why those records would be of any benefit to him. What is more, Jackson's need for the medical records was not obvious given that he defended a rape charge on the basis of consensual sexual conduct. His assertion that the car in which the rape occurred might have provided evidence was likewise nothing more than speculation.

We have consistently held that speculation does not show actual prejudice. *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, ¶ 11; *McFeeture* at ¶ 120. In any event, M.C. did not claim that she resisted in any way after Jackson forced her submission by threatening her with the knife, so it is unclear exactly what evidence would have been recovered that would have aided the defense. On these facts, we cannot say that the court abused its discretion by finding that Jackson failed to show actual prejudice when claiming preindictment delay relating to his prosecution for the rape of M.C. With Jackson having failed to show actual prejudice, we need not examine whether the state engaged in the delay for the sole purpose of gaining a tactical advantage over him or for some other impermissible reason.

{¶7} The July 1996 rape was of M.P. She told the police that she had been sleeping in a house boat that had been trailered in a residential area when she awakened to find a man she knew as "Ron" engaging in intercourse with her. The male placed the blade of a knife against her neck and told her that he would cut her throat if she screamed. When the male finished, he left. M.P. called the police. The police report described M.P. as "heavily intoxed [sic]." M.P. was transported to the hospital and examined. She told the police that she knew "Ron" from the neighborhood. At that point, M.P. stopped cooperating — the police report stated that "attempts have been made for this victim to assist in this investigation. As of this date, there have been no responses to said attempts. As of this date, there are no further investigative leads."

{¶8} Jackson argued that he suffered actual prejudice from the delay in returning the indictment charging the rape of M.P. because the victim's 911 telephone call reporting the rape is unavailable, the house boat is no longer available for inspection, and the whereabouts of the investigating detective are "unknown." None of these claims rises to the level of actual prejudice because they all rely on speculation as to what the "evidence" would have shown. With DNA testing conclusively establishing Jackson as the source of the semen recovered from M.P., he no longer had a plausible defense of alibi. That left him with a theory of consensual sexual conduct and there was no reason to think that the houseboat would have yielded evidence in support of that theory. Jackson did not claim that there was anyone else present who might corroborate his claim that he and M.P. engaged in consensual sexual conduct, so it is unclear what "additional

investigation" by the police would have uncovered, at least insofar as Jackson believed that other witnesses might have been useful to his defense.

{¶9} As was the case with the rape of M.C., we have no basis for concluding that the court abused its discretion by finding that Jackson failed to show actual prejudice from the delay in returning the indictment charging him with the rape of M.P. Jackson offered nothing but speculation as to how he had been prejudiced from the delay.

{¶10} Prior to trial, Jackson filed a motion for separate trials of the rape counts, arguing that they were not part of the same act or transaction, were not connected by time, were not part of a common plan or scheme, and were not part of a course of criminal conduct. He maintained that there was a real and substantial risk that, if the counts were not severed, the jury might not keep evidence relating to each count segregated, leading to the possibility that he could be convicted for "something" as a result of having been charged with crimes occurring on multiple occasions. The state argued that joinder of both rape charges was proper because the crimes were so similar that it could use the facts of either case as other acts evidence under Evid.R. 404(B) to show motive, preparation and plan in targeting women of a certain age as targets for rape. The court denied the motion without opinion and Jackson assigns this decision as error.

{¶11} Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character, * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." As the language of the rule suggests, the word

"offenses" is applied broadly to include not only those acts stemming from a single criminal transaction, but to criminal transactions that may not be tied by time and place. The law favors joining multiple offenses in a single trial under Crim.R. 8(A) for reasons of judicial economy. *State v. Hamblin*, 37 Ohio St.3d 153, 157-158, 524 N.E.2d 476 (1988).

{¶12} Although favored, joinder is not automatic. Crim.R. 14 protects parties from prejudicial joinder, stating: "If it appears that a defendant * * * is prejudiced by a joinder of offenses * * * the court shall order an election or separate trial of counts * * *, or provide such other relief as justice requires." Severance may be warranted if the trial court finds a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence. *United States v. Zafiro*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). This has been characterized as the "spill-over effect" — where the jury "relies on evidence presented on one set of counts when reaching a conclusion on the other set." *United States v. Ervin*, 540 F.3d 623, 628 (7th Cir.2008). Given that joinder is favored, the defendant bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance. *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus.

{¶13} If the defendant establishes prejudice from joinder, the burden shifts to the state to rebut in one of two ways. First, if in separate trials the state could introduce evidence of the joined offenses as "other acts" under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder. *State v. Coley*, 93 Ohio St.3d 253, 259,

2001-Ohio-1340, 754 N.E.2d 1129. Second, the state can refute prejudice by showing that "evidence of each crime joined at trial is simple and direct." *State v. Schaim*, 65 Ohio St.3d 51, 59, 1992-Ohio-31, 600 N.E.2d 661. A decision to deny severance will be reversed only upon a showing that the court abused its discretion. *State v. LaMar*, 95 Ohio St.3d 181, 194, 2002-Ohio-2128, 767 N.E.2d 166.

{¶14} If we were to assume without deciding that Jackson showed prejudice from the joinder of the two rape offenses and that evidence of one rape would not have been admissible to prove the other rape as other acts evidence under Evid.R. 404(B), we would nonetheless have no basis for finding that the court abused its discretion by denying severance. Prejudice was negated by the simple and direct nature of the evidence in both cases, such that it was unlikely that the jury would have confused the evidence proving the separate offenses. *State v. Johnson*, 88 Ohio St.3d 95, 110, 2000-Ohio-276, 723 N.E.2d 1054; *Schaim*, 65 Ohio St.3d at 59, 1992-Ohio-31, 600 N.E.2d 661 (evidence of each offense was so simple and distinct that the jury could clearly segregate the evidence). With Jackson pursuing a consent defense to the charges and there being no eyewitnesses to the rapes, the state's case came down to a credibility contest between Jackson and the victims. These issues did not require complicated proof. In fact, Jackson makes no claim that the facts were confused or that the testimony overlapped in any sense, nor would the record on appeal permit that conclusion if asserted. *See State v. Robinson*, 6th Dist. Lucas No. L-09-1001, 2010-Ohio-4713, ¶ 50. The simple and direct nature of the cases against Jackson offset any prejudice that might have resulted in trying

both rape offenses together.  The court did not abuse its discretion by refusing to sever the separate incidents for trial.

{¶15} Jackson defended the rape charge filed by M.C. by claiming that she was a prostitute and that they engaged in a consensual transaction.  To bolster that defense, Jackson filed a motion in limine prior to trial seeking a ruling allowing him to introduce evidence that M.C. had a history of arrests for prostitution and loitering for prostitution (five in the 12-month period leading up to the rape, including an arrest for loitering for prostitution nine days before the rape and an arrest for prostitution just seven days after the rape), and that police reports characterized M.C. as a "well known prostitute."  The state invoked the rape shield statute to oppose the motion in limine, arguing that the evidence did not answer the question of consent, that the evidence was inflammatory and prejudicial, and that it was being offered for the sole purpose of discrediting the victim. The court denied the motion in limine without opinion.

{¶16} The Rape Shield Statute, R.C. 2907.02(D), states:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

{¶17} The desire to protect victims of sexual assault does not supersede a defendant's constitutional rights — the rape shield statute may not infringe upon a defendant's constitutional right of confrontation, right to a fair trial, and right to present a

defense. *See State v. Gardner*, 59 Ohio St.2d 14, 17-18, 391 N.E.2d 337 (1979); *State v. Young*, 8th Dist. Cuyahoga No. 92127, 2009-Ohio-5354, ¶ 23. To strike a balance between a defendant's rights and the interests promoted by the rape shield statute, the court must consider the probative value of the excluded evidence in terms of its relevancy to the matters as proof of which it is offered. *Gardner* at 18.

{¶18} Evid.R. 609 permits a witness to be impeached with evidence of a prior felony conviction or a conviction for a crime of dishonesty. The police records showed only that M.C. had been *arrested* 19 different times for prostitution-related offenses, but none of those arrests appeared to lead to a conviction: the records showed that 17 of the arrests led to dismissals; the records did not indicate any disposition for two of the arrests. With M.C. having no felony convictions, the arrest records could not be used to impeach her. *State v. McLeod*, 7th Dist. Jefferson No. 05 JE 15, 2006-Ohio-7076, ¶ 45. Had M.C. given testimony specifically denying that she had been arrested for prostitution, that may have opened the door to impeachment with the arrest records. *See, e.g., State Hapney*, 4th Dist. Washington Nos. 01CA30 and 01CA31, 2002-Ohio-3250, ¶ 60, fn. 6. But M.C. did not so testify so the court had no basis for allowing Jackson to use the arrest records for impeachment.

{¶19} In the motion in limine, Jackson claimed to seek admission of the police records for reasons other than impeachment of the victim — he wished to use those records as proof that M.C. engaged in prostitution to earn money to support a drug habit. This argument fails for the same reason that the arrest records could not be used for

impeachment: they did not prove that M.C. was guilty of prostitution-related offenses.   In addition, evidence that M.C. had a reputation as a prostitute "is not sufficiently probative of consent to outweigh the state's legitimate interests in excluding the testimony, at least where there is no suggestion in the record that financial arrangements were entered into for sexual activities in this instance."   *Gardner*, 59 Ohio St.2d at 18.

{¶20} Jackson argues that this case is more like *State v. Williams*, 21 Ohio St.3d 33, 487 N.E.2d 560 (1986), where the Ohio Supreme Court allowed evidence that a victim of an alleged rape had engaged in prostitution with men after she testified on direct examination that she *never* had sex with men.   *Williams* cited *Gardner* for the proposition that "in some circumstances evidence which the rape shield law would render inadmissible would nevertheless be admitted in furtherance of the defendant's constitutional rights."   *Id*. at 35.   The Supreme Court allowed the evidence in *Williams* because it was not used for impeachment, but to rebut the victim's assertion that she did not consent to sexual conduct with the male defendant because she *never* had sexual relations with males.   The Supreme Court conceded that the testimony served to impeach the victim, but found it had been offered for the more important purpose of negating the victim's implied assertion that she did not consent to sexual conduct with Williams because of her sexual orientation.   *Id*. at 36.

{¶21} Factually, this case is distinguishable from *Williams*.   The motion in limine was obviously filed pre-trial, so the court knew only that Jackson wanted to offer into evidence records that M.C. had been arrested multiple times for prostitution, but

apparently not convicted of that offense. The decision to bar those records was not an abuse of discretion.

**{¶22}** In addition to the motion in limine regarding M.C.'s arrest records, Jackson filed a motion in limine to exclude in-court identification testimony by both victims. He argued that although M.C. identified him immediately after the rape, she failed to do so when shown a photo array some 18 years later before the indictment issued. Jackson also argued that M.P. failed to identify him either at the time of the offense or by photo array 18 years later.

**{¶23}** We need not consider whether the court erred by refusing to bar the in-court identification because any error would have been harmless beyond a doubt given that Jackson's DNA had been found in both victims, thus providing positive proof of his identity. *See State v. Young*, 2d Dist. Montgomery No. 23438, 2010-Ohio-5157, ¶ 148; *State v. Johnstone*, 8th Dist. Cuyahoga No. 92885, 2010-Ohio-1854, ¶ 30-31. Crim.R. 52(A) states that we may disregard "[a]ny error, defect, irregularity, or variance which does not affect substantial rights." The DNA evidence essentially forced Jackson's concession that he engaged in sexual conduct with both victims but that it was consensual — a theory that defense counsel outlined to the jury in opening statement. Jackson makes no argument that the concession rested in any way on the court's refusing to suppress an in-court identification by either victim. The in-court identification could not have been as prejudicial to the defense case as the DNA evidence, so the error was truly harmless.

{¶24} During the state's examination of M.C., it asked her to explain why she did not contact the police and pursue her initial allegation that she had been raped by Jackson. She answered by stating that she was uncomfortable "reliving her darkest secrets" and then stated, "[t]he guy's in jail for rape now * * *." Jackson objected and asked for a mistrial on grounds that the victim had mentioned his criminal record — at the time of trial, Jackson was in prison for felonious assault and abduction with a sexual predator specification. The state noted that in opening statement, the defense told the jury that Jackson would be testifying, so it argued that any error in the victim's testimony was harmless given that the state would be entitled to delve into Jackson's criminal record when he took the witness stand. The court denied the motion for a mistrial, instructed the jury to disregard M.C.'s statement, and told the jury that "defendant has not been convicted nor did he plead to a rape charge." Jackson argues that the court abused its discretion by denying the motion for a mistrial.

{¶25} We review a court's decision on a motion for a mistrial for an abuse of discretion. *See State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). What is more, we presume that the jury heeds the court's cautionary instructions. *See State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 23.

{¶26} Any reference to the prior convictions of a defendant during the state's case-in-chief is a violation of Evid.R. 609(A)(1), which allows a party to attack the credibility of a witness with a prior conviction. The use of the word "witness" in the rule

presupposes that the witness has testified — and at the point where M.C. made reference to Jackson being in jail for "rape," Jackson had yet to testify.

{¶27} Despite M.C.'s improper mention of Jackson's being in jail, the court cured the error. It not only instructed the jury to disregard M.C.'s statement, but told the jury that Jackson did not have a rape conviction. We presume that the jury followed this instruction and Jackson points to nothing in the record that would convince us that M.C.'s testimony was so egregious that a fair trial was no longer possible. *See State v. Treesh*, 90 Ohio St.3d 460, 480, 2001-Ohio-4, 739 N.E.2d 749. In addition, we find that even without the curative instruction, any error would have been harmless given that defense counsel told the jury in opening statement that Jackson would be testifying, so his impeachment by prior conviction was assured. *See State v. Spirko*, 59 Ohio St.3d 1, 15, 570 N.E.2d 229 (1991).

{¶28} In his sixth assignment of error, Jackson argues that his convictions were against the manifest weight of the evidence. He maintains that his version of events was "just as credible as the version [sic] testified to by both M.C. and M.P."

{¶29} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that

the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact, *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus, and the trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). For this reason, it is only the "rare" case in which the trier of fact's verdict will be overturned as being against the manifest weight of the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶30} Jackson's argument against conviction for the rape of M.C. is that she lacked reliability and credibility. He argues that she admitted that at the time of the offense, she had been addicted to crack cocaine for almost three years, was unemployed, and that her addiction cost $75-$100 per day — the implication being that she prostituted herself to pay for her drug habit consistent with his theory of consent. That M.C. might have resorted to prostitution to pay for a drug habit did not necessarily mean that her interaction with Jackson on the night she claimed to have been raped had been a business transaction. M.C. told the police that Jackson used both a knife and a BB gun during the rape, and the police confirmed that Jackson had both weapons in the car. In contradiction to M.C.'s allegation that Jackson held the knife to her throat while raping her, Jackson testified that "I never pulled out that knife" — he claimed that M.C. pulled the knife out from between the car seats during the encounter and that he took it away

from her. The jury could find that version of events unbelievable, if for no other reason than that it ran counter to Jackson's explanation that the fishing knife was part of his fishing tackle, but inexplicably not in his tackle box. The jury could have focused on that fact to find M.C.'s version of events credible.

{¶31} M.P.'s testimony was more lacking in some of the specifics offered by M.C., but no less credible. She testified that after spending an evening at a bar, she retired to a houseboat where she was staying (the houseboat was parked in a parking lot in a residential area). She awoke at some point to find a stranger armed with a knife having intercourse with her. She hollered and screamed, but the stranger "took his time" to finish what he started. At some point during the encounter, the knife cut her arm. Importantly, medical records from that time confirmed that M.P. had an "abrasion to her right forearm," a notation that would be consistent with being cut with a knife. This made M.P.'s assertion that Jackson forced himself on her by use of a knife that much more credible, particularly when Jackson claimed that they engaged in consensual intercourse. In addition, the medical records showed M.P. to be "tearful, upset" and yelling out that "it wasn't fair" in a manner that the jury could find consistent with her claim of rape. Against this evidence, Jackson offered nothing more than doubt because M.P. told the police that her attacker was someone named "Ron," a name that he never used. But regardless of whether M.P. had the correct name of her assailant, DNA evidence conclusively showed Jackson to be the source of semen recovered from her, so her inability to name her assailant correctly was of no consequence on the issue of

identity. And to the extent that M.P.'s not correctly naming Jackson at the time might have affected her credibility, the jury could reasonably have found that to pale by comparison given that she suffered an abrasion on her arm consistent with her claim that Jackson had a knife out as he raped her.

{¶32} When imposing sentence, the court sentenced Jackson to ten years on both of the rape counts relating to M.C. and ordered him to serve those sentences concurrently (the court merged the kidnapping count with the rape counts). The court sentenced Jackson to ten years on the rape count relating to M.P. (the court merged the kidnapping and aggravated burglary counts). The court then ordered the rape counts for both victims to be served consecutively, for a total sentence of 20 years. Jackson argues that consecutive service was contrary to law because the court failed to make the findings required by R.C. 2929.14(C)(4) before ordering consecutive service.

{¶33} R.C. 2953.08(G)(2) provides two bases for a reviewing court to overturn the imposition of consecutive sentences: the sentence is "otherwise contrary to law" or the reviewing court clearly and convincingly finds that "the record does not support the sentencing court's findings" under R.C. 2929.14(C)(4). Those findings are that (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender and (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In addition to these two factors, the court must find any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or

sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶34} Jackson argues that the court only made partial findings under R.C. 2929.14(C)(4) in that it did not specifically find that consecutive sentences were not disproportionate to the seriousness of his conduct and did not find that consecutive sentences are not disproportionate to the danger he poses to the public.

{¶35} The court made the following statement at sentencing:

This was a troubling case. This gentleman is obviously a sick person, both emotionally and mentally.

I agree that he'll never stop committing the type of offenses that he has committed. He was arrested on the first victim and obviously didn't learn his lesson because shortly thereafter, four or five weeks later, he did the same type of behavior with another person; apparently thinking he's gotten away with it. Many years later, he does the same type of behavior for which he's presently serving a lengthy prison term.

In terms of punishing the offender and protecting the public, this case cries out for it. Also this is clearly a pattern of conduct with multiple victims; therefore, I find that consecutive sentences are necessary in this case.

I'm going to give him ten years on Counts 1 and 2 concurrent. I'm going to give him ten years on Count 4 consecutive. So that's a total of 20 years in this case.

**{¶36}** We have repeatedly stated that the court does not have to state the R.C. 2929.14(C)(4) findings word-for-word. *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 13 (8th Dist.). In fact, we have noted in light of *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, that the Ohio Supreme Court has taken a more "relaxed approach" to the findings required by R.C. 2929.14(C)(4), finding compliance when the reviewing court can "discern" those findings from statements made by the sentencing judge. *State v. Gum*, 8th Dist. Cuyahoga No. 101496, 2015-Ohio-1539, ¶ 15.

**{¶37}** The court made an explicit finding that consecutive service was necessary to protect the public from future crime or to punish the offender: "In terms of punishing the offender and protecting the public, this case cries out for it." We can discern a finding that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public from the court's statement Jackson committed two rapes in the span of four to five weeks and that he was "obviously a sick person, both emotionally and mentally." We discern a finding relating to Jackson's history of criminal conduct from both the court's acknowledgment that Jackson committed two separate rapes in a five-week period and was at the time of sentencing serving a prison term for "the same type of behavior." And the court's statement that Jackson engaged in a pattern of conduct with multiple victims and that "he'll never stop committing the type of offenses that he has committed" established that consecutive sentences were necessary to protect the public from future crime.

**{¶38}** Jackson makes no argument that these findings were unsupported by the record, nor would the facts of this case support that argument even if made. We do, however, agree with Jackson that the court's sentencing entry did not include all of these findings. We therefore sustain this assignment of error in part and remand with instructions for the court to incorporate its findings nunc pro tunc under R.C. 2929.14(C)(4) into the sentencing entry. *See Bonnell*, at syllabus.

**{¶39}** Because the rape offenses occurred in 1996, the court classified Jackson as a sexual predator under Megan's Law, as codified in former R.C. 2950.01 et seq. Jackson argues that the facts of this case do not support the classification based on a finding that there was clear and convincing evidence to show that he was likely to commit a sexually oriented offense in the future. He maintains that the court made the classification without expert testimony and primarily on the basis of a 2011 conviction in which he lured a prostitute into his car and forcibly raped her.

**{¶40}** Under former R.C. 2950.01(E), a sexual predator is defined in R.C. 2950.01(E) as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." A finding that a person was a sexual predator had to be made upon clear and convincing evidence. Former R.C. 2950.09(B)(3).

**{¶41}** It was said that Megan's Law was not a "one strike and you're out" law, meaning that a single conviction was not irrefutable proof that an offender was a sexual predator. *State v. Ward*, 130 Ohio App.3d 551, 561, 720 N.E.2d 603 (8th Dist.1999).

But multiple convictions were a factor for the court to consider in addition to the nature of the interaction, whether the offender displayed cruelty, and whether the offender engaged in demonstrated pattern of abuse. *See generally* former R.C. 2950.09(B)(2)(f), (h), and (i).

**{¶42}** The facts of the 2011 conviction for felonious assault were harrowing: Jackson picked up a prostitute in his van, handcuffed her, and raped her vaginally, orally, and anally, knocked her unconscious, then abandoned her on the side of the road bound, naked, and covered in blood. The rapes in this case were likewise committed with the use of force. The pattern in his behavior was manifest and it required no expert testimony to convince the court that Jackson was an exceptionally dangerous sexual deviant. Against these fact, Jackson makes no real argument, so we have no basis for overturning the court's conclusion that clear and convincing evidence supported the conclusion that Jackson was likely to commit a sexually oriented offense in the future.

**{¶43}** Judgment is affirmed, but the case is remanded for the limited purpose of correcting the sentencing entry nunc pro tunc.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that appellant and appellee share the costs herein taxed.

_____
MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, P.J., and
ANITA LASTER MAYS, J., CONCUR