[Cite as *State v. Wilson*, 2016-Ohio-2718.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102921**

# STATE OF OHIO

PLAINTIFF-APPELLANT/
CROSS-APPELLEE

vs.

# DWAYNE WILSON

DEFENDANT-APPELLEE/
CROSS-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-590113-A

**BEFORE:**    Celebrezze, J., Keough, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**    April 28, 2016

**ATTORNEYS FOR APPELLANT/CROSS-APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Daniel T. Van
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE/CROSS-APPELLANT**

Michael P. Maloney
24441 Detroit Road
Suite 200
Westlake, Ohio 44145

FRANK D. CELEBREZZE, JR., J.:

{¶1} Appellant, the state of Ohio ("the state"), brings this appeal challenging defendant-appellee, Dwayne Wilson's ("Wilson"), sentence for rape and kidnapping. Specifically, the state argues that the trial court's sentence, imposed under Am.Sub.H.B. 86 ("H.B. 86"), is contrary to law. Furthermore, Wilson filed a cross-appeal, arguing that the trial court erred by denying his motion for separate trials and motion to dismiss for preindictment delay. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The Cuyahoga County Grand Jury returned a 14-count indictment charging Wilson with: (1)-(2) rape, R.C. 2907.02(A)(2), (3) kidnapping, R.C. 2905.01(A)(4), (4)-(5) rape, R.C. 2907.02(A)(2), (6) kidnapping, R.C. 2905.01(A)(4), (7)-(8) rape, R.C. 2907.02(A)(2), (9) kidnapping, R.C. 2905.01(A)(4), (10) rape, R.C. 2907.02(A)(2), (11) kidnapping, R.C. 2905.01(A)(4), (12)-(13) rape 2907.02(A)(2), and (14) kidnapping, R.C. 2905.01(A)(4).

{¶3} Am.Sub.S.B. No. 2 ("S.B. 2"), 146 Ohio Laws, part IV, 7136, became effective on July 1, 1996, and H.B. 86 became effective on September 30, 2011. Counts 1 through 9 alleged offenses occurring before S.B. 2 became effective, and Counts 10 through 14 alleged offenses occurring after S.B. 2 became effective.

{¶4} The state dismissed Counts 7, 8, and 9 before trial. The matter proceeded to a jury trial on the remaining 11 counts. At the close of trial, the jury found Wilson guilty of rape as charged in Counts 1, 2, 4, 5, 10, 12, and 13. Furthermore, the jury found Wilson guilty of kidnapping as charged in Counts 3, 6, 11, and 14. Regarding Counts 10, 11, 12, 13, and 14, the trial court found Wilson to be a sexual predator pursuant to H.B. 180.

{¶5} At sentencing, the trial court imposed a definite prison term of ten years on Counts 1 through 6, and imposed a prison term of life with parole eligibility at ten years on Counts 10 through 14. The trial court ordered Wilson to serve all counts consecutively, for an aggregate prison term of 110 years to life. The trial court credited Wilson with 166 days of time served.

{¶6} The state filed the instant appeal assigning one error for review:

I. Because [Wilson] committed his offenses prior to July 1, 1996, the trial court erred when it sentenced [Wilson] under sentencing provisions effective July 1, 1996 and H.B. 86 provisions effective September 30, 2011.

{¶7} Wilson filed a cross-appeal, assigning two additional errors for review. Wilson argues that (1) the trial court erred by denying his motion for separate trials and (2) the trial court erred by denying his motion to dismiss for preindictment delay.

## II. Law and Analysis

### A. Trial Court's Sentence

{¶8}   The state appeals from the trial court's judgment sentencing Wilson under the sentencing provisions of H.B. 86 for his rape and kidnapping convictions.   The state contends that because Wilson committed the offenses in Counts 1 through 6 prior to July 1, 1996, the trial court erred when it sentenced him under S.B. 2 and H.B. 86 sentencing provisions. The state argues that the trial court was required to sentence Wilson under the sentencing provisions that were in effect prior to July 1, 1996.

{¶9} The state acknowledges this court's prior precedent on the issue it raises. Nevertheless, the state appeals "for purposes of further appellate review or potential intra-district conflict (should the assigned panel reach a different outcome)."   The state argues that the plain language of H.B. 86 did not repeal the uncodified provisions of S.B. 2 and did not permit the bill's amendments to apply to offenses committed prior to July 1, 1996.   Accordingly, the state contends that a trial court is permitted to impose an indefinite sentence for offenses committed prior to July 1, 1996.

{¶10} For the reasons that follow, we decline to depart from our prior precedent.

{¶11} In *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, the jury found the defendant guilty of rape and kidnapping that occurred in 1993.   *Id*. at _ 7.   On appeal, the defendant-appellant argued that the trial court erred by sentencing him under the sentencing provisions in effect at the time the rape and kidnapping were

committed. *Id*. at _ 41. Defendant-appellant argued that the trial court should have sentenced him under H.B. 86, which became effective on September 30, 2011. *Id*. The state argued that H.B. 86 is an extension of S.B. 2 and only applies to offenses committed on or after July 1, 1996. *Id*. Accordingly, the state argued that defendant's rape and kidnapping offenses, committed in 1993, were not subject to the sentencing provisions under H.B. 86. *Id*.

{¶12} The issue before this court was whether the trial court should sentence a defendant under H.B. 86 for an offense committed prior to July 1, 1996. In reviewing S.B. 2, this court stated:

> in S.B. 2 the General Assembly specifically declared that all defendants who committed crimes on or before July 1, 1996 had to be sentenced under the law in existence at the time of the offense, "notwithstanding division (B) of section 1.58 of the Revised Code." Section 3, Am.Sub.S.B. No. 269, 146 Ohio Laws, Part IV, 11099, amending Section 5 of S.B. 2. *See State v. Rush*, 83 Ohio St.3d 53, 697 N.E.2d 634 (1998).

*Id*. at _ 42. This court noted that H.B. 86, unlike S.B. 2, does not include exclusionary language regarding R.C. 1.58:

> Sections 3 and 4 of the act expressly provide that certain specified offenses
>
> and certain sentencing provisions are subject to H.B. 86 sentencing
>
> amendments even though the subject offenses were committed prior to its
>
> effective date.

*Id*. at _ 43. This court further noted that Section 4 of H.B. 86 states that "[the act applies] to defendants penalized under R.C. 2929.14(A)," and that "H.B. 86 expressly

states that where its sentencing provisions provide a more lenient sentence than previous sentencing statutes, then R.C. 1.58(B) makes the H.B. 86 amendments applicable." *Id.* at _ 47.

{¶13} Based on the foregoing analysis, this court held that the defendant was "entitled to the more lenient sentencing provisions of H.B. 86 by virtue of R.C. 1.58(B)," and that the trial court's indefinite prison sentence was not authorized by law. *Id.* at _ 48.

{¶14} In *State v. Wheeler*, 8th Dist. Cuyahoga No. 103275, 2015-Ohio-3768, the defendant pled guilty to two counts of rape that occurred in 1994. *Id.* at _ 1. The trial court sentenced the defendant under the provisions of H.B. 86. *Id.* On appeal, the state of Ohio argued that the trial court erred by sentencing the defendant under S.B. 2 and H.B. 86. *Id.* The issue before this court was "whether the trial court correctly sentenced [defendant] under H.B. 86, which was in effect at the time he was sentenced, or whether it should have sentenced him under pre-S.B. 2 law that was in effect at the time of his offenses." *Id.* at _ 7. This court acknowledged that it had already considered the issue, and "concluded that a defendant in Wheeler's position should be sentenced under H.B. 86, which was in effect at the time of sentencing." *Id.* at _ 8; *see State v. Byran*, 8th Dist. Cuyahoga No. 101209, 2015-Ohio-1635; *State v. Girts*, 8th Dist. Cuyahoga No. 101075, 2014-Ohio-5545; *State v. Steele*, 8th Dist. Cuyahoga Nos. 101139 and 101140, 2014-Ohio-5431; *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415; *State*

*v. Hill*, 8th Dist. Cuyahoga No. 101633, 2015-Ohio-2389.[1]   Accordingly, this court affirmed the trial court's judgment sentencing the defendant under H.B. 86.   *Wheeler* at _ 9.

{¶15} In the instant matter, Wilson committed the rape and kidnapping offenses in 1994, 1995, and 1997.   The jury convicted Wilson on Counts 1, 2, 3, 4, 5, and 6 for offenses occurring before July 1, 1996, and on Counts 10, 11, 12, 13, and 14 for offenses occurring after July 1, 1996.

{¶16} In 1994, under former law, Wilson faced a possible prison sentence of 5 to 25 years for each of the rape and kidnapping counts.   However, under the current law of R.C. 2929.14(A)(1), Wilson faced a possible prison sentence of 3 to 11 years for each of the rape and kidnapping counts.

{¶17} Although Wilson committed the offenses as charged in Counts 1, 2, 3, 4, 5, and 6 at a time when the sentencing law provided for indefinite sentencing, the trial court imposed definite sentences under the current sentencing regime, Am.H.B. No. 86, effective September 30, 2011.   The court imposed a sentence consistent with a line of decisions from this court holding that R.C. 1.58(B) allowed defendants, like Wilson, whose crimes were committed before the effective date of H.B. 86, to be sentenced under that statute's sentencing provisions because the penalties for rape under H.B. 86 had been

---

[1]   These cases are all being held by the Ohio Supreme Court for review in *State v. Thomas*, 143 Ohio St.3d 1427, 2015-Ohio-3126, 35 N.E.3d 534.   The court heard oral arguments on April 5, 2016.

reduced from those penalties in effect at the time he committed his crimes. *See Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415; *Girts*, 8th Dist. Cuyahoga No. 101075, 2014-Ohio-5545; *Steele*, 8th Dist. Cuyahoga Nos. 101139 and 101140, 2014-Ohio-5431.

{¶18} The state argues that the trial court erred by ordering a definite term of incarceration because Wilson should have been subject to an indefinite sentence under the sentencing law as it existed at the time he committed his offenses. The state candidly acknowledges that its position is contrary to controlling authority from this appellate district and that it offers this assignment of error solely to preserve further appellate review.

{¶19} After reviewing the record, we affirm the trial court's judgment sentencing Wilson under H.B. 86 in accordance with this court's precedent, which remains intact. The state's sole assignment of error is overruled.

### B. Motion for Separate Trials

{¶20} On cross-appeal, Wilson argues that the trial court erred by denying his motion for separate trials and that joinder of his offenses was improper.

{¶21} This court reviews a trial court's decision on joinder for an abuse of discretion. *State v. Grimes*, 8th Dist. Cuyahoga No. 94827, 2011-Ohio-4406, ¶ 15, citing *State v. Segines*, 8th Dist. Cuyahoga No. 89915, 2008-Ohio-2041.

**{¶22}** The indictment included 14 different counts that alleged two different offenses committed against four different victims. Wilson proceeded to trial on seven counts of rape and four counts of kidnapping. Counts 1, 2, and 3 charged Wilson with raping and kidnapping Victim 1 in 1994. Counts 4, 5, and 6 charged Wilson with raping and kidnapping Victim 2 in 1995. Counts 10 and 11 charged Wilson with raping and kidnapping Victim 3 in 1997. Counts 12, 13, and 14 charged Wilson with raping and kidnapping Victim 4 in 1997. Wilson moved to sever the counts into these four groups for trial and contends that the trial court abused its discretion by denying that request.

**{¶23}** For the reasons that follow, we disagree, and find that (1) joinder of Wilson's counts for trial was proper under Crim.R. 8(A), and (2) Wilson was not prejudiced by joinder.

### 1. Crim.R. 8(A)

**{¶24}** Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character, * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." In fact, "[t]he law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.'" *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990), quoting *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). "Joinder is

liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992). *Accord Torres* at 343.

{¶25} As the language of Crim.R. 8(A) suggests, "the word 'offenses' is applied broadly to include not only those acts stemming from a single criminal transaction, but to *criminal transactions that may not be tied by time and place*." (Emphasis added.) *State v. Jackson*, 8th Dist. Cuyahoga No. 102394, 2015-Ohio-4274, _ 11.

{¶26} After reviewing the record, we find that the rape and kidnapping offenses are properly charged in the same indictment under Crim.R. 8(A) because they are of a similar character. Thus, joinder of the offenses for trial was proper.

{¶27} Victim 1 testified about the 1994 attack. Victim 1 testified that she was alone and walking up the street near Kinsman Road and East 93rd Street when a car approached her. Victim 1 testified that her attacker "snatched her," holding a knife to her throat, and shoved her into his car. Victim 1 could not recall any details about her attacker's car. Victim 1 testified that after her attacker got her into his car, he held the knife to her throat and raped her. Victim 1 testified that her attacker stole $50 from her inside the car. Victim 1 further testified that her attacker proceeded to drive to an abandoned building. Inside the building, Victim 1 testified that her attacker punched and kicked her, knocking her to the floor, and raped her again. Victim 1 testified that her attacker penetrated her vaginally with his penis. Victim 1 testified that the next

thing that she remembered after her attacker raped her in the building was being in the hospital. Victim 1 testified that the nurses performed a rape kit examination at the hospital.

{¶28} Victim 2 testified about the 1995 attack. Victim 2 testified that she was on her way to work and was alone waiting for a bus at Broadview Road and Pearl Road around 9 p.m. Victim 2 testified that while she was waiting for the bus, her attacker pulled up in his car and began flirting with her. Victim 2 testified that her attacker offered to give her a ride to work and that she initially declined the offer. Victim 2 testified that her attacker continued to talk to her and that she eventually accepted his offer for a ride. Although Victim 2 could not recall details about her attacker's car at the time of trial, she told police at the time of the incident that her attacker was driving a "lime color" Buick Century with cloth interior. Victim 2 testified that while her attacker was driving her to her destination, he pulled into a gas station on Broadview Road and Tuxedo Avenue. Victim 2 testified that her attacker pulled around the back of the gas station, parked next to the dumpsters, and said that he needed to use the restroom. Victim 2 testified that no one else was around in the parking lot. Victim 2 testified that her attacker did not go into the restroom and that he urinated by the dumpsters instead. Victim 2 testified that she tried to get out of her attacker's car, but was unable to because there was something wrong with the door.

{¶29} Victim 2 testified that her attacker quickly got back into the car, pulled a "carpet cutting" knife from the driver's side door panel, and held the knife to her throat. Victim 2 testified that her attacker ordered her to take off her clothes, and that she complied with his order because she was scared that he would kill her if she did not comply. Victim 2 testified that her attacker ordered her to give him oral sex and then he had vaginal sex with her in the car. Victim 2 testified that her attacker took alcohol swabs and cotton balls out of the glove compartment and used them to clean himself off when he was done. Victim 2 testified that her attacker stole two gold necklaces from her inside the car. Victim 2 testified that her attacker let her out of the car when he was done.

{¶30} Victim 2 testified that she walked up the street and called the police when she got to Snow Road. Victim 2 testified that the police took her to Deaconess Hospital where nurses performed a rape kit examination. Victim 2 testified that at some point during her encounter with her attacker, he told her that he had other cars and mentioned a red truck. Victim 2 was not able to identify her attacker from a photo array in 2014; however, she subsequently remembered what her attacker looked like and identified him from a photo array in 2015.

{¶31} Victim 3 testified about the March 1997 attack. Victim 3 testified that she was walking on Buckeye Road near East 121st Street to her friend's house around 4 or 5 a.m. when her attacker pulled up to her on the street. Victim 3 testified that her attacker

was driving a van that had a bed in the back, but was unable to recall the color of the van.

Victim 3 testified that her attacker honked at her and asked her to "come here for a minute." Victim 3 testified that she walked over to the van and her attacker asked her to hop in. Victim 3 testified that she thought her attacker wanted drugs and that he mentioned that he had $10. Victim 3 testified that she had crack cocaine in her possession and that she intended to complete the transaction in her attacker's van on Buckeye Road. Victim 3 testified that her attacker began driving away, said he wanted to go to the corner because there was traffic behind him, and stated that he would circle the block and drop her back off on Buckeye Road. Victim 3 testified that she said that was fine.

{¶32} Victim 3 testified that when the van got to Williams Avenue, her attacker pulled over in the parking lot of a high-rise building. Victim 3 testified that the parking lot is set off to the side, not visible from the street, and that she did not see any other cars or people from where her attacker parked the van. Victim 3 testified that she asked her attacker why he was pulling over and that he said he wanted to give her $10 for sex. Victim 3 testified that she told her attacker that she was not interested and that she told him to drop her back off. Victim 3 testified that she tried to get out of the van, and that her attacker pulled a box cutter from the driver's side door panel. Victim 3 testified that her attacker ordered her to get back inside the van, held the box cutter to her throat, and ordered her to get in the back. Victim 3 testified that she complied with her attacker's

orders because she was scared that he would cut her throat and kill her if she did not comply. Victim 3 testified that her attacker had sex with her in the back of the van, penetrating her with his penis while he was still holding the box cutter in his hand. Victim 3 testified that her attacker opened the door and pushed her out of the van when he was done.

{¶33} Victim 3 testified that she immediately called the police from a pay phone and that the police took her to the hospital. Victim 3 testified that nurses conducted a rape kit examination at the hospital. Victim 3 testified that she learned that her attacker was charged with a crime in 2006 and that she received a subpoena to appear in court. However, Victim 3 testified that she was not able to appear in court because she was arrested on the day before she was supposed to appear. Victim 3 testified that she thought that the 2006 case was over when she failed to appear in court. Victim 3 testified that she identified Wilson as her attacker from a photo array in 2014.

{¶34} Victim 4 testified about the August 1997 attack. Victim 4 testified that she was waiting for a bus at East 55th Street and Quincy Avenue when her attacker drove by and asked her if she wanted a ride. Victim 4 testified at trial that she believed her attacker was driving a dark blue minivan. However, Victim 4 told the police at the time of the incident that her attacker's van was red. Victim 4 testified that she declined her attacker's offer for a ride and that she continued waiting for the bus. Victim 4 testified that she waited for the bus for roughly an hour, but the bus never showed up. Victim 4

testified that her attacker continued driving by her and told her that the bus was not coming. Victim 4 testified that she eventually accepted her attacker's offer for a ride because she wanted to make it home before her curfew.

{¶35} Victim 4 testified that her attacker said he needed to make one stop on the way to her house and said that it would only take five minutes. Victim 4 testified that her attacker pulled over into a field or the parking lot of an apartment building on East 71st Street between Chester Avenue and Euclid Avenue, and said that his friend was coming out. Victim 4 testified that her attacker reached toward the driver's side door, as if he was getting out of the vehicle, and pulled out a knife from the door panel. Victim 4 testified that her attacker held the knife to her neck and told her to get in the back of the van and take off her clothes. Victim 4 testified that her attacker said he would "slice" her throat if she screamed. Victim 4 testified that she complied with her attacker's orders because she was afraid that he would cut her throat if she did not comply. Victim 4 testified that her attacker came to the back of the van with the knife in his hand and told her to lay down. Victim 4 testified that her attacker first performed oral sex on her, putting his mouth on her vagina. Victim 4 further testified that her attacker made her turn over and he penetrated her vagina with his penis. Victim 4 testified that her attacker still had the knife in his hand when he finished raping her. Victim 4 testified that she attempted to leave the van when her attacker was done, but that he insisted on

giving her a ride. Victim 4 testified that she tried jumping out of the van and was finally able to exit the vehicle by East 93rd Street and Hough Avenue.

{¶36} Victim 4 testified that she ran up to some males in the area and told them that the man in the car just raped her, and that her attacker turned off his lights and sped off. Victim 4 testified that she went to her sister's house, told her what happened, then went to Mt. Sinai hospital where nurses performed a rape kit examination. Victim 4 testified that she spoke to the police at the hospital, and that she lied to the police about where her attacker approached her. Victim 4 explained that she told officers that she was downtown coming from a movie at Tower City, rather than at the bus stop at East 55th Street and Quincy Avenue, because she was not supposed to be going to her friend's house. Victim 4 testified that she was subsequently called down to the police station for a lineup but her attacker was not one of the individuals in the lineup. Victim 4 testified that she later identified her attacker from a photo array in 2014, and that she admitted to the police at this time that she was at the bus stop when she got into her attacker's car.

{¶37} After reviewing the record and the victims' testimony regarding the four attacks, we find that the requirements of Crim.R. 8(A) are satisfied because the offenses were related in character and manner and they constituted a particular course of conduct in which Wilson engaged. The evidence demonstrates that Wilson systematically targeted young African-American females who were alone on the street, forced or invited the females into his vehicle, held the females at knife-point, drove the females to an

isolated area, and vaginally raped the females.    Furthermore, the evidence shows that Wilson raped all four of the female victims inside his vehicle.    Although Victim 1 testified that Wilson's knife was drawn when he "snatched" her off of the street, Victims 2, 3, and 4 testified that Wilson pulled his knife from the driver's side door panel.    In all four cases, Wilson held his knife to the victims' throats.    Victims 1 and 3 testified that Wilson stole property from them.    Victims 2 and 4 testified that Wilson raped them in the back seat of his vehicle.

**{¶38}** Accordingly, based on the similar character of Wilson's rape and kidnapping offenses, joinder of the offenses for trial was proper under Crim.R. 8(a).

## 2. Prejudice

**{¶39}** If it appears that a defendant is prejudiced by joinder of offenses, the defendant may move to sever the charges under Crim.R. 14.    *Lott,* 51 Ohio St.3d at 163, 555 N.E.2d 293.    Crim.R. 14, relief from prejudicial joinder, provides, in relevant part:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

**{¶40}** The defendant bears the burden of proving (1) his rights were prejudiced and (2) the trial court abused its discretion in denying severance.    *State v. Brinkley*, 105

Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29, citing *Torres,* 66 Ohio St.2d 340, 421 N.E.2d 1288, at syllabus; *see also State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166 (holding that a trial court's decision to deny severance will be reversed only upon a showing that the trial court abused its discretion).

**{¶41}** In *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, the Ohio Supreme Court explained that there are two ways that the state may rebut a defendant's claim of prejudicial joinder:

> First, if in separate trials the state could introduce evidence of the joined offenses as "other acts" under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder. *Lott*, 51 Ohio St.3d at 163, 555 N.E.2d 293. Second, the state can refute prejudice by showing that "evidence of each crime joined at trial is simple and direct." *Id*.

*Id*. at ¶ 96.

**{¶42}** In the instant matter, Wilson was not prejudiced by joinder of the offenses because (1) evidence of each of Wilson's offenses would be admissible in separate trials under Evid.R. 404(B) and (2) there is simple and direct evidence as to each victim, such that it is unlikely that the jury would confuse the evidence proving the separate offenses.

### a. 404(B) Evidence

**{¶43}** We initially note that the admission of other crimes, wrongs, or acts evidence lies within the broad discretion of the trial court. *See State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987).

**{¶44}** The Ohio Supreme Court has recognized that when the evidence of other acts is very similar to the charged offense or of an inflammatory nature — as is the case in the instant matter — there is a "particularly high" danger that the jury "will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment." *Schaim* 65 Ohio St.3d at 59, 600 N.E.2d 661.

**{¶45}** Evid.R. 404(B), governing other crimes, wrongs, or acts, provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**{¶46}** Pursuant to Evid.R. 404(B), evidence that an accused committed a crime other than the one for which he is on trial is generally not admissible when its sole purpose is to show either (1) his propensity or inclination to commit crime or (2) that he acted in conformity with bad character. *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). *Accord State v. Jamison*, 49 Ohio St.3d 182, 184, 552 N.E.2d 180 (1990). The exceptions to this general rule are contained in R.C. 2945.59, which provides, in relevant part:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶47} In order "[t]o be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question." *State v. Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), paragraph one of the syllabus; *see Jamison*, at syllabus.

{¶48} In *State v. Williams*, 8th Dist. Cuyahoga No. 94965, 2011-Ohio-5650, 961 N.E.2d 1203, this court, en banc, reversed the defendant's convictions for rape, gross sexual imposition, kidnapping, and unlawful sexual conduct with a minor, holding that under *Curry*, other acts evidence offered to show a scheme, plan, or system is inadmissible unless it shows the background of the alleged crime or proves the identity of the accused. *Williams* at _ 50-51. Furthermore, this court held that the Ohio Supreme Court's holding in *Curry* precluded the admission of evidence of a prior sexual relationship the defendant had with a different minor, because the sexual acts of that relationship had been "chronologically and factually separate occurrences" and the identity of the accused was not an issue at trial. *Id*. at _ 58.

{¶49} In *State v. Williams*, 134 Ohio St.3d 521, 983 N.E.2d 1278 (2012), the Ohio Supreme Court reversed this court's judgment, concluding, in relevant part:

Evid.R. 404(B) is in accord with R.C. 2945.59 in that it precludes the admission of evidence of other crimes, wrongs, or acts offered to prove the character of an accused in order to show that the accused acted in conformity therewith, but it does not preclude admission of that evidence for other purposes, e.g., *to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident*. Evidence that Williams had targeted teenage males who had no father figure to gain their trust and confidence and groom them for sexual activity with the intent of sexual gratification may be admitted to show the plan of the accused and the intent for sexual gratification. Accordingly, the judgment of the appellate court is reversed, and the judgment of the trial court is reinstated.

(Emphasis added.) *Id*. at 527.

**{¶50}** In *State v. Flonnory*, 31 Ohio St.2d 124, 285 N.E.2d 726 (1972), the Ohio Supreme Court explained:

Much confusion about R.C. 2945.59 might be avoided if it were observed that nowhere therein do the words "like" or "similar" appear. *The statute permits the showing of "other acts" when such other acts "tend to show" certain things*. If such other acts do in fact "tend to show" any of those things they are admissible notwithstanding they may not be "like" or "similar" to the crime charged.

(Emphasis added.) *Id*. at 126.   Furthermore, in *Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180, the Ohio Supreme Court held:

Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B). To be admissible these other acts must tend to show by substantial proof "identity" or other enumerated purposes under Evid.R. 404(B). Although the standard for admissibility is strict, *the other acts need not be the same as or similar to the crime charged*.

(Emphasis added.) *Id*. at syllabus.

**{¶51}** In the instant matter, Wilson analogizes his case to *State v. Frazier*, 8th Dist. Cuyahoga No. 83024, 2004-Ohio-1121, in which this court essentially held that evidence of the defendant's other sexual acts was not similar enough to the sexual acts in question to show a modus operandi, as suggested by Evid.R. 404(B). *Id.* at _ 16. In *Frazier*, this court recognized the delicacy with which "other acts" evidence in cases involving sexual offenses must be afforded:

> the offenses in this case are highly inflammatory in nature. Sexually-related offenses elicit emotional outrage, even more so when those offenses involve children. This, combined with the fact that the offenses against each victim varied in degree and that the testimony by each victim was similar, the fact-finder would have a very difficult time looking at the evidence supporting each offense as simple and distinct because the temptation would be too great to respond to the evidence emotionally, rather than rationally.

*Id.* at _ 18.

**{¶52}** In *State v. Addison*, 8th Dist. Cuyahoga No. 89644, 2008-Ohio-52, the defendant was indicted in two separate cases involving the attacks of two victims. First, the defendant was charged with kidnapping, aggravated robbery, and two counts of rape. Second, the defendant was charged with kidnapping, attempted rape, and gross sexual imposition. *Id.* at _ 3. The trial court granted the state's motion to consolidate the two cases for trial. *Id.* at _ 4. The state noted the similarities between the two attacks of the victims:

> both involved a sexual assault; appellant abducted both victims at gunpoint from streets within one block of each other; appellant took both victims back to his house to commit the offenses; force was used against both

victims; and appellant's DNA showed that he was the perpetrator of the offenses against both victims.

*Id*. at _ 8. This court affirmed the trial court's judgment, finding that evidence of defendant's other crimes would be admissible "other acts" evidence under Evid.R. 404(B) "to prove a common scheme or plan, and not merely to show appellant's propensity for committing sexual assaults." *Id*. at _ 9.

{¶53} In the instant matter, Wilson emphasizes the following facts in support of his position that evidence of his other crimes would not be admissible under Evid.R. 404(B): (1) the offenses are sexual crimes, (2) the offenses occurred "essentially two decades ago," (3) the charges relate to four different victims, at different locations, and at different times, (4) three years passed between the rape and kidnapping of Victim 1 and the rape and kidnapping of Victim 4, (5) admissibility of other acts evidence was not necessary for identification purposes, because there was DNA evidence collected from each victim confirming Wilson's identity, and (6) the attacks of the four victims were "not so identical to each other" that they should be admitted under Evid.R. 404(B) — because some of the victims voluntarily accepted a ride from him, but he grabbed Victim 1 on the street, and punched, kicked, and forced her into his vehicle.

{¶54} After reviewing the record, we find that the instant matter is distinguishable from *Frazier*, 8th Dist. Cuyahoga No. 83024, 2004-Ohio-1121, and that Wilson's rape and kidnapping offenses involved a specific pattern of conduct. As noted above, each incident involved (1) vaginal rape, (2) of a young, African-American female, (3) at

knife-point, and (4) in an isolated area. In each case, the female victims were alone on the street when Wilson approached the victims in his vehicle. In each of the four attacks, Wilson held a knife to the victims' throats and vaginally raped the victims in his car. This evidence demonstrates Wilson's intent, preparation, and plan in targeting, isolating, and raping his victims. Furthermore, because Wilson used the same method in committing the rape and kidnapping offenses, evidence of these offenses would be admissible in the trial of the other crimes to prove "scheme, plan, or system." *See State v. Page*, 8th Dist. Cuyahoga No. 84139, 2004-Ohio-6008, _ 17, citing *State v. Barnhart*, 6th Dist. Huron No. H-02-046, 2003-Ohio-4850 (refusing to sever rape, sexual battery, and rape counts involving different victims because the defendant utilized the same method with each victim).

**{¶55}** Accordingly, Wilson was not prejudiced by joinder because evidence of his rape and kidnapping offenses would be admissible in each case as "other acts" evidence under Evid.R. 404(B).

### b. Simple and Direct Evidence

**{¶56}** Assuming, arguendo, that evidence of Wilson's rape and kidnapping offenses would not be admissible in each case under Evid.R. 404(B), Wilson is not prejudiced by joinder because there is simple and direct evidence of each of the offenses.

**{¶57}** The Ohio Supreme Court has recognized that a defendant is not prejudiced by joinder when simple and direct evidence exists. *Lott*, 51 Ohio St.3d at 163, 555 N.E.2d 291; *State v. Johnson*, 88 Ohio St.3d 95, 109, 723 N.E.2d 1054 (2000); *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991). Under this test, the state is "merely required to show that evidence of each of the crimes joined at trial is simple and direct." *Franklin* at 122, citing *Lott* at 163. If the state can meet the requirements of the "joinder test," it need not meet the requirements of the stricter "other acts" test. *Franklin* at 122.

**{¶58}** In the instant matter, each of Wilson's rape and kidnapping offenses involved simple and direct evidence, such that a jury would be capable of segregating the proof required for each offense. *Jackson*, 8th Dist. Cuyahoga No. 102394, 2015-Ohio-4274, at _ 14 (holding that the simple and direct nature of the cases against the defendant offset any prejudice that might have resulted in trying both rape offenses together). The state proved the offenses by victim testimony, rape kits, and DNA evidence linking Wilson to the rape kits. Thus, we cannot say that the jury would have confused the evidence proving the separate rape and kidnapping offenses.

**{¶59}** Based on the simple and direct evidence used by the state to prove each of the rape and kidnapping offenses, Wilson was not prejudiced by the joinder of the crimes for trial. Accordingly, the first assignment of error raised by Wilson on cross-appeal is overruled.

## C. Motion to Dismiss for Preindictment Delay

**{¶60}** Wilson argues that the trial court erred by not dismissing Counts 4, 5, 6, 10, and 11 based on preindictment delay.

**{¶61}** We initially note that Wilson neither filed a motion to dismiss for preindictment delay, raised the issue of preindictment delay, nor asserted a violation of his due process rights in the trial court. Thus, as Wilson raises the issue of preindictment delay for the first time on appeal, we review for plain error. *See State v. Berry*, 10th Dist. Franklin No. 97AP-964, 1999 Ohio App. LEXIS 2983 (June 29, 1999) (noting "[a] defendant must assert the issue of denial of a speedy trial at or prior to the commencement of trial or the issue is waived on appeal"); *State v. Turner*, 168 Ohio App.3d 176, 2006-Ohio-3786, 858 N.E.2d 1249, ¶ 21 (5th Dist.) (noting "an appellant cannot raise a speedy trial issue for the first time on appeal"). Pursuant to the terms of Crim.R. 52(B), plain errors or defects that affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶62}** The statute of limitations for a criminal offense is a defendant's primary protection against overly stale criminal charges. *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Pursuant to R.C. 2901.13(A)(3), the statute

of limitations for rape and kidnapping is 20 years. In the instant matter, Wilson was indicted within the 20-year statutory period.

{¶63} However, the Due Process Clause of the Fifth Amendment has been applied in some circumstances to provide additional protection against egregious delay in instituting prosecutions. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). As with all due processes claims, a claim of preindictment delay rests on "basic concepts of due process and fundamental justice." *State v. Jones*, 2015-Ohio-2853, 35 N.E.3d 606, ¶ 13 (8th Dist.).

{¶64} To establish that preindictment delay violated the Due Process Clause, a defendant must show (1) that the delay caused actual and substantial prejudice to his right to a fair trial, and (2) that the state delayed prosecution to gain a tactical advantage or slowed the process down for some other impermissible reason. *United States v. Gouveia*, 467 U.S. 180, 192, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), citing *Lovasco* at 789; *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus. In *State v. Whiting*, 84 Ohio St.3d 215, 702 N.E.2d 1199 (1998), the Ohio Supreme Court held that the second element of the test requires the state to produce evidence of a justifiable reason for the delay. *Id*. at 217. Thereafter, the due process inquiry involves a balancing test by the court, weighing the reasons for the delay against the prejudice to the defendant, in light of the length of the delay. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 51. Decisions to grant or deny a motion

to dismiss for preindictment delay are reviewed for an abuse of discretion. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983).

**{¶65}** To show actual prejudice, a defendant must establish the "exculpatory value" of the alleged missing evidence. *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 45. This requires a showing of how unavailable evidence or testimony would have proven an asserted defense. *State v. Robinson*, 6th Dist. Lucas No. L-06-1182, 2008-Ohio-3498, ¶ 121. Prejudice may be established where the defendant contends that the delay resulted in the loss of witness testimony, lost memory, or spoiled or destroyed evidence. *State v. Doska*, 113 Ohio App.3d 277, 281, 680 N.E.2d 1043 (8th Dist.1996). Courts have consistently held that proof of actual prejudice must be "'specific, particularized, and non-speculative.'" *State v. McFeeture*, 2014-Ohio-5271, 24 N.E.3d 724, ¶ 120 (8th Dist.), quoting *State v. Stricker*, 10th Dist. Franklin No. 03AP-746, 2004-Ohio-3557, ¶ 36.

**{¶66}** Wilson cites *Jones*, 2015-Ohio-2853, 35 N.E.3d 606 (8th Dist.) (en banc), to support his argument that Counts 4, 5, 6, 10, and 11 should be dismissed based on preindictment delay. In *Jones*, the defendant was charged with rape and kidnapping in 2013 from an incident allegedly occurring in 1993. *Id*. at ¶ 3. The victim told the police that she and Jones went to his mother's house and got into a violent argument, during which Jones took her into a bedroom and raped her. *Id*. at ¶ 4. The victim reported the

crime to the police, identified Jones by name, and submitted to rape kit testing. The police took the victim's clothing and obtained the 911 call reporting the alleged rape. Jones claimed that the police interviewed him and he told them that he and the victim engaged in consensual sexual conduct. However, the police claimed that they were unable to locate the victim for a subsequent follow-up, so they shelved the rape kit and closed the case until such time as the victim came forward. When the police finally tested the rape kit and received positive results for Jones's DNA, they waited more than a year to reopen the case, and indicted him on the last day of the 20-year limitations period.

{¶67} Jones filed a motion to dismiss the indictment, claiming that the 20-year delay caused him actual prejudice in offering a defense that the victim consented to sexual conduct. As proof of actual prejudice, he claimed an inability to offer evidence from his mother, by then deceased, who was in the house at the time of the alleged rape and would have corroborated his assertion that he and the victim were in a relationship and that there was no violent fight as described by the victim. Furthermore, Jones argued that the clothing that the victim wore on the night of the alleged rape had been destroyed, denying him the opportunity to examine it and undermine her claim that she and Jones engaged in a violent fight. The trial court granted Jones's motion to dismiss based on preindictment delay, finding that (1) the mother's death, the loss of physical evidence, and the certainty of diminishing memories, constituted actual prejudice, and (2) the state offered no justification or satisfactory reason for the delay.

**{¶68}** *Jones* prompted this court's en banc consideration of "the standard for demonstrating actual prejudice" in rape cases filed on the eve of the 20-year statute of limitations after rape kits were finally submitted for testing. *Id*. at ¶ 13. This court stated that we would evaluate claims of actual prejudice "in terms of basic concepts of due process and fundamental justice." *Id*. at ¶ 47. This court found that the trial court did not abuse its discretion by concluding that Jones established actual prejudice from the preindictment delay:

> in this case, where the identity of the defendant as the accused perpetrator was known from the beginning, where the state barely investigated the case and closed it within one week of the start of its investigation, and where no further investigation or technological advances occurred in the time between the initial investigation and the indictment, we evaluate Jones's claim of actual prejudice in terms of basic concepts of due process and fundamental justice.

> In so evaluating his claim, we find that he suffered actual prejudice in the near 20-year delay in prosecuting him. This is the type of case the Ohio Supreme Court warned of in *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, where the state "simply fails, or refuses, to take action for a substantial period." *Id*. at ¶ 56.

*Id*. at ¶ 47-48.

**{¶69}** After reviewing the record, we find that the facts of the instant matter, unlike *Jones*, do not warrant the conclusion that the court committed plain error by allowing the state to proceed to trial on Counts 4, 5, 6, 10, and 11.

**{¶70}** First, regarding actual prejudice, Wilson emphasizes that at the time of trial, the offenses charged in Counts 4, 5, and 6 were nearly 20 years old, and the offenses

charged in Counts 10 and 11 were more than 17 years old. However, aside from the passage of time, Wilson fails to identify any evidence or potential witnesses that would have helped him prove his innocence had the trial occurred sooner. Notably, Wilson fails to provide concrete proof of (1) any physical evidence that has exculpatory value, (2) any potential witness who can no longer testify, or (3) a witness's faded memory or recollection of the events that would have affected the preparation of his defense or changed the outcome at trial. *See State v. Clemons*, 2013-Ohio-5131, 2 N.E.3d 930, ¶ 17 (8th Dist.). We have consistently held that speculation does not show actual prejudice. *Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, at ¶ 11; *McFeeture*, 2014-Ohio-5721, 24 N.E.3d 724, at ¶ 120. By merely speculating that he was prejudiced by the passage of time between the 1995 and 1997 offenses and the 2014 indictment, Wilson has failed to demonstrate that he suffered actual prejudice from the delay in bringing this prosecution. Thus, we cannot say that the trial court committed plain error for allowing the state to try Wilson on Counts 4, 5, 6, 10, and 11.

{¶71} As Wilson failed to present evidence of substantial prejudice, the state has no burden of producing evidence of a justifiable reason for the delay in prosecution. *Walls,* 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 51; *see Clemons* at ¶ 22. Nevertheless, for the reasons that follow, we find that the state's delay in prosecution was justifiable.

{¶72} Second, regarding the delay in prosecution, Wilson argues that Counts 4, 5, 6, 10, and 11 should be dismissed because although the police knew his identity around the time of the attacks, the police and the state "engaged in a minimal investigation" and did nothing between the time of the initial investigations and his indictment 15-20 years later. Regarding the case involving Victim 2, the prosecutor stated that Wilson was arrested within 5 days of the incident, but "[Wilson] was released and the case did not go forward." Wilson argues that the police did nothing to further investigate the matter involving Victim 2 for the next 15 years until submitting the evidence and rape kit to the Bureau of Criminal Investigation ("BCI") and receiving a DNA match in CODIS. Furthermore, regarding the case involving Victim 3, the prosecutor stated that Wilson was indicted for the attack in 2006, but the case was dismissed when she failed to appear in court. Wilson argues that although the police knew his identity, the evidence regarding Victim 3's attack "sat dormant for years and years."

{¶73} The state argues that the delay in prosecution was justifiable and not an effort to gain a tactical advantage. Regarding the case involving Victim 2, the state contends that Wilson was never indicted for the attack before the 2014 indictment in the instant matter. Regarding the case involving Victim 3, the state contends that the 2006 case was dismissed when the victim failed to appear in court for trial. Furthermore, the state argues that it did not cease actively investigating the case based on negligence or an

error in judgment. The state emphasizes that the DNA evidence linking Wilson to the four attacks is new evidence that was not available at the time of the initial investigations.

**{¶74}** In *Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097, the Ohio Supreme Court addressed unjustifiable delays in prosecution:

> a delay in the commencement of prosecution can be found to be unjustifiable when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant, *see United States v. Marion*, *supra*, or when the state, through negligence of error in judgment, effectively ceases the active investigation of a case, but *later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased.*

(Emphasis added.) *Id.* at 158.

**{¶75}** After review, when balancing the alleged prejudicial delay in this case against the state's justifiable reason for the delay, we conclude that Wilson's due process rights were not violated. Furthermore, we cannot say that the state's delay in prosecuting Wilson was egregious, intended to gain a tactical advantage over Wilson, or the result of negligence of error in judgment. The DNA evidence linking Wilson to the four attacks was new evidence justifying the delayed indictment. *See State v. Bell*, 8th Dist. Cuyahoga No. 102141, 2015-Ohio-4178, ¶ 47 (defendant's DNA evidence found on a swab taken from the victim's vagina was new evidence justifying the delayed indictment). Thus, we find that the state's delay in prosecuting Wilson was justified.

**{¶76}** As Wilson failed to demonstrate that he suffered actual prejudice from the delay in prosecution, and the state's delay in prosecution was justified, we cannot say that

the trial court committed plain error by allowing the state to prosecute Wilson on Counts 4, 5, 6, 10, and 11. Dismissal on the basis of preindictment delay was not warranted. Accordingly, the second assignment of error raised by Wilson on cross-appeal is overruled.

### III. Conclusion

{¶77} This court has previously concluded that a defendant should be sentenced under H.B. 86, which was in effect at the time of sentencing, rather than pre-S.B. 2 sentencing laws in effect at the time the offenses were committed, for an offense committed prior to July 1, 1996. We decline to depart from our prior precedent and affirm the trial court's judgment sentencing Wilson under H.B. 86. Accordingly, we overrule the state's sole assignment of error.

{¶78} The trial court did not abuse its discretion by joining Wilson's rape and kidnapping offenses for trial. First, joinder of Wilson's counts for trial was proper under Crim.R. 8(A), because the offenses are of a similar character. Second, Wilson was not prejudiced by joinder, because (1) the offenses involved a specific pattern of conduct and would be admissible in each case as "other acts" evidence under Evid.R. 404(B), and (2) there is simple and direct evidence of each of the offenses, such that a jury would be capable of segregating the proof required for each offense. Accordingly, we overrule Wilson's first assignment of error on cross-appeal.

**{¶79}** The trial court neither abused its discretion nor committed plain error by allowing the state to prosecute Wilson on Counts 4, 5, 6, 10, and 11. First, Wilson failed to demonstrate that he suffered actual prejudice from the delay in prosecution. Second, the state's delay in the prosecution was justified, because the state received new DNA evidence linking Wilson to the four attacks. Accordingly, we overrule Wilson's second assignment of error on cross-appeal.

**{¶80}** Judgment affirmed.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

FRANK D. CELEBREZZE, JR., JUDGE

MARY EILEEN KILBANE, J., CONCURS;
KATHLEEN ANN KEOUGH, P.J., CONCURS IN PART AND CONCURS IN JUDGMENT ONLY IN PART (WITH SEPARATE OPINION ATTACHED).

KATHLEEN ANN KEOUGH, P.J., CONCURRING IN PART AND CONCURRING IN JUDGMENT ONLY IN PART:

{¶81} Although I fully concur with the majority's resolution of Wilson's assignments of error, in light of my concurring opinion in *State v. Bryan*, 8th Dist. Cuyahoga No. 101209, 2015-Ohio-1635, I concur in judgment only regarding the majority's resolution of the state's assignment of error.